UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| BRANDON PAUL GOTWALT ) | Case No. 07-11866-SSM |
| ) | Chapter 7 |
| Debtor ) | |
| ) | |
| AUSTIN CORNEJO, ADMINISTRATOR ) | |
| OF THE ESTATE OF JACK STEVEN ) | |
| CORNEJO ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Adversary Proceeding No. 07-1128 |
| ) | |
| BRANDON GOTWALT ) | |
| ) | |
| Defendant ) | |

**MEMORANDUM OPINION**

Before the court are cross-motions for summary judgment in this action to determine the dischargeability of a $1.97 million wrongful death judgment against the debtor arising from the shooting death of Jack Steven Cornejo. The debtor contends that the state court's refusal to let a punitive damages claim go to the jury precludes any finding that the debtor's actions were willful and malicious. For his part, the plaintiff contends that the debtor is precluded by the state court judgment from disputing that he fired the fatal shot or from arguing that he acted in self-defense. For the reasons stated, court determines that although the plaintiff is entitled to partial summary judgment on particular issues, the defendant is nevertheless entitled to summary judgment that the debt is dischargeable.

1

Background

Mr. Cornejo died on June 25, 2005, of a gunshot wound to the back. Although many of the circumstances surrounding the shooting are disputed, there is no dispute that it was the debtor, Brandon Paul Gotwalt, who fired the fatal shot. Although no criminal charges were brought, Mr. Cornejo's father, Austin Cornejo, qualified as administrator of his estate and brought a wrongful death action against the debtor in the Circuit Court of Fairfax County, Virginia. The case was presented to a jury on two theories: first, that the younger Mr. Cornejo's death was the result of the debtor's negligence, and second, that it resulted from an intentional battery. The jury was also instructed on the affirmative defenses of contributory negligence and self-defense. Although punitive damages were sought, the trial judge struck the punitive damages claim at the close of the plaintiff's evidence, stating "the evidence in this case simply doesn't rise to the level that's required to even get to the jury on punitive damages." (Trial Transcript p. 410). The jury returned with a verdict against the debtor in the amount of $1,954,400.00 plus funeral expenses of $16,588.00, and a judgment for those sums was entered on March 14, 2007.[1] The debtor's petition for appeal was denied by the Supreme Court of Virginia on December 12, 2007. Although the plaintiff assigned as cross-error the trial court ruling striking the punitive damages claim, a separate appeal was not taken from that ruling, and the denial of the debtor's petition for appeal had the effect of affirming that ruling.[2]

---

[1] On motion of the debtor, the funeral expenses were subsequently reduced to $15,437.91.

[2] *See* Rule 5:18, Rules of the Supreme Court of Virginia, Comment ("No appeal is granted on the basis of an assignment of cross-error alone. Cross-error will not be considered unless the appellant's petition for appeal is granted. An appellee desiring to assert error notwithstanding refusal of the appellant's petition must file his own notice of appeal . . . and his separate petition
(continued...)

In the interim, the debtor filed a petition for relief under chapter 7 of the Bankruptcy Code in this court on July 19, 2007, and received a discharge of his dischargeable debts on October 24, 2007. The present action was filed by the elder Mr. Cornejo on September 25, 2007, and seeks a determination that the judgment is nondischargeable under § 523(a)(6), Bankruptcy Code, as a willful and malicious injury. In his answer to the complaint, the debtor characterized the shooting as "accidental," denied that it "was somehow intentional or malicious in any way," and asserted that the debtor "was in fact defending himself from an attack by the decedent." Answer ¶ 5. Indeed, the debtor expressly denied that he "even wrongfully caused the death" of Mr. Cornejo.[3] Answer ¶ 14.

## Discussion

### I.

Among the debts excluded from discharge in a chapter 7 case are debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." § 523(a)(6), Bankruptcy Code. As the Supreme Court has explained, for the debtor's conduct to be "willful" within the meaning of the statute, he or she must have intended the consequences of the act, and not merely the act itself. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). As a result, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id*. at 64, 118 S.Ct. at 978. A "malicious" injury,

---

[2](...continued)
for appeal. . . .").

[3] To be fair, at the time the answer was filed, the debtor's petition for appeal of the verdict was still pending before the Supreme Court of Virginia. However, the debtor did not amend his answer after the petition for appeal was denied.

3

however, does not necessarily require a showing of ill-will; it is sufficient that the act was done "deliberately and intentionally in knowing disregard of the rights of another." *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985).

II.

Both parties rely in their motions on the preclusive effect of the state court judgment. Although the Supreme Court has ruled that res judicata, or claim preclusion, does not apply to dischargeability litigation, *see Brown v. Felsen*, 442 U.S. 127, 99 S.Ct 2205, 60 L.Ed.2d 767 (1979), collateral estoppel, or issue preclusion, does. *Grogan v. Garner*, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n.11, 112 L.Ed.2d 755 (1991). In this connection, the debtor asserts that the state court's striking of the claim for punitive damages precludes a finding of willfulness in the present action, while the administrator argues that the judgment precludes any finding that the debtor acted in self-defense or was not the cause of Mr. Cornejo's death.

A.

The debtor's argument raises a novel issue. Although a number of reported decisions have addressed whether an *award* of punitive damages is sufficient to show that the debtor's conduct was willful and malicious, none have addressed the converse situation, namely whether the *rejection* of punitive damages constitutes a determination that the debtor's conduct, although culpable, did not rise to the level of being willful and malicious.

In determining whether a state court judgment is entitled to collateral estoppel effect in dischargeability litigation, a bankruptcy court applies the preclusion law of the forum in which the judgment was entered. *Hagan v. McNallen (In re McNallen)*, 62 F.3d 619, 624 (4th Cir. 1995). In a recent decision, the Fourth Circuit explained that under Virginia law, the application

4

of collateral estoppel requires the moving party to establish five elements. *Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006). First, the parties to the two proceedings must be the same or in privity. *Id.* Second, the prior action must have resulted in a valid and final judgment against the party against whom preclusion is shouth, or his privy. *Id.* Third, the factual issue to be precluded must have been actually litigated in the prior proceeding. *Id.* Fourth, the factual issue to be precluded must have been essential to the judgment in the prior proceeding. *Id.* Lastly, there must be mutuality, such that the party to be precluded would have been bound had the prior litigation reached the opposite result. *Id.*

*Duncan*, like the present action, concerned the dischargeability of a wrongful death judgment that had been obtained against a debtor in a Virginia state court prior to the filing of the bankruptcy petition, with the added circumstance that the state court had awarded punitive damages. The jury in that case had been instructed that punitive damages could be awarded if the debtor's conduct were either willful "or was so reckless as to evince a conscious disregard for the safety of [the decedent]." *Id.* at 730. In the ensuing dischargeability litigation in bankruptcy court, the decedent's estate sought a ruling that the state court judgment was determinative on the issue of whether the debtor intended to kill the decedent, her adopted daughter. *Id.* at 727. Although the bankruptcy court found that the judgment established that the fatal injury was the result of an intentional blow by the debtor, it held that the judgment was not determinative on the issue of whether the debtor's conduct was willful and malicious. On an interlocutory appeal from that ruling, the district court held that the state court judgment was not only not *sufficient* to establish that the debtor's conduct was willful and malicious, but actually *precluded* such a finding, and ruled that the debt was dischargeable. *Id.* at 728. The Fourth

5

Circuit, however, reversed the district court, and held that "the state court judgment does not support an application of collateral estoppel to the ultimate issue in the . . . adversary proceeding and, therefore, neither party is entitled to summary judgment." *Id.* The Court reasoned that "in order for collateral estoppel to apply here, the issue of whether [the debtor] intended to injure [her daughter] (as opposed to engaging in an intentional act that injured the child) must have been both litigated in and necessary to the state court proceeding." *Id.* at 729. The Court held that neither the wrongful death judgment itself nor the award of punitive damages required the jury to find that the debtor actually intended to injure her daughter. *Id.* at 729-30. Specifically addressing the punitive damages award, the Court stated:

> One of the two standards in the punitive damages instruction—recklessness—is satisfied by conduct that is inadequate for the purposes of § 523(a)(6). . . . Even if we were to assume that the willful conduct portion of the punitive damages instruction is synonymous with a "willful and malicious injury" under § 523(a)(6), nothing before us suggests that the jury made its determination on that basis. . . . Accordingly, application of collateral estoppel based on the punitive damages award is inappropriate here.

*Id.* at 730.

B.

The present case presents precisely the reverse situation. Prior to 1982, punitive damages were not available in a wrongful death action in Virginia. *Watson v. Whittaker*, 207 Va. 1032, 154 S.E.2d 124 (1967) (so holding). In that year, however, Virginia's wrongful death statute was amended to allow an award of punitive damages "for willful or wanton conduct, or such recklessness as evinces a conscious disregard for the safety of others." Va. Code Ann. § 8.01-52(5); *Peacock v. J.C. Penney Co., Inc.*, 764 F.2d 1012, 1014 (1985) (noting change in the law). Here, the trial judge, in granting a motion to strike punitive damages, held that "the evidence in

6

this case simply doesn't rise to the level that's required to even get to the jury on punitive damages." Given this clear judicial holding that the debtor's conduct was not even reckless, let alone willful or wanton, the court can see no reason why that holding should not bar the plaintiff from relitigating the issue of willfulness in this action.

The court acknowledges that giving preclusive effect to the state court's striking of the punitive damages claim leads to a somewhat anomalous result. Had the plaintiff *not* requested punitive damages and simply tried the case in the state court on a theory of negligence, the resulting judgment would not have barred him from offering proof, in a later dischargeability proceeding, that the debtor's actions were in fact willful and malicious. Such is the clear import of the Supreme Court's holdings in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct 2205, 60 L.Ed.2d 767 (1979) and *Archer v. Warner*, 538 U.S. 314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003). In *Brown,* the Court held that settlement of a state court suit by a judgment that did not disclose the nature of the debtor's liability did not prevent a bankruptcy court from looking behind the judgment to determine if the underlying debt was incurred through deceit, fraud or malicious conversion. Similarly, in *Archer* the Court held that where a claim of fraud was settled by an agreement to pay a specified sum and the fraud claim was dismissed with prejudice, the creditor could nevertheless show the fraudulent nature of underlying debt in a later dischargeability action. As the Court explained in *Brown*,

> So long as a debtor is solvent, the debtor and creditor alike may prefer a simple contract suit to complex tort litigation. Default and consent judgments are common in collection proceedings. For the creditor, the prospect of increased attorney's fees and the likelihood of driving the debtor into bankruptcy may offset the advantages of exemplary damages or other extraordinary remedies.

442 U.S. at 137 n.8, 99 S.Ct. at 2212 n.8.  Accordingly, "the mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt."  442 U.S. at 138, 99 S.Ct. at 2213.  *See also E.I. Hamm & Assocs., Inc. v. Sparrow (In re Sparrow)*, 306 B.R. 812, 847 (Bankr. E.D. Va. 2003) (state court judgment in lawsuit asserting theories only of breach of contract, fraud, and breach of fiduciary duty did not bar creditor in dischargeability action from asserting claim for willful and malicious injury).

By contrast with *Brown* and *Archer*, the creditor here *did* undertake in the state court litigation to establish, not merely that the debtor wrongfully caused the younger Mr. Cornejo's death, but that the debtor's conduct was at the very least so reckless as to evince a conscious disregard for the safety of others.  Nothing in *Brown* or *Archer* remotely suggests that had the creditors in those cases proceeded to trial in state court on counts alleging actual fraud but obtained judgments only for breach of contract, the rejection of the fraud claims would not have had preclusive effect in subsequent dischargeability litigation.  So it is here.  The plaintiff was not obligated to seek punitive damages or prove willfulness in the state court action in order to preserve a claim of nondischargeability, but having elected to do so, he is bound by the resulting judgment that rejected his assertion that the debtor's conduct was at least reckless.[4]

---

[4] The court need not determine whether a different result would follow from a jury's mere failure to award punitive damages.  To the extent jury instructions make an award of punitive damages discretionary, it could certainly be argued that failure to award such damages shows only that the jury did not think the circumstances sufficiently egregious.  A subjective determination of this type would not necessarily foreclose a finding that the debtor's conduct was nevertheless objectively willful and malicious.  Here, however, there is more than simply a jury's failure to award punitive damages—the trial judge ruled, as a matter of law, that evidence was insufficient to show that the debtor's conduct was even reckless, let alone willful or wanton.

II.

Since collateral estoppel precludes the plaintiff from contending in this litigation that the debtor's actions were willful and malicious, normally there would be no need to address the plaintiff's contention that the debtor for his part is precluded from contending that he acted in self-defense or was not the cause of Mr. Cornejo's death.  Mindful, however, that an appellate court might disagree with this court's ruling on the willfulness issue, some brief discussion is appropriate.  At oral argument, the debtor did not dispute that his claim of self-defense was necessarily rejected by the jury when it awarded compensatory damages.  Accordingly, the final judgment that was entered on the jury's verdict is conclusive on that issue, as it is on the issue of whether the debtor causes Mr. Cornejo's death.  Although the debtor was therefore free, had this matter gone to trial, to present evidence that he did not intend to cause Mr. Cornejo's death, any assertion that he acted in self-defense or did not fire cause Mr. Cornejo's death is precluded

A separate order will be entered granting partial summary judgment to the plaintiff but also granting the debtor's motion for summary judgment and dismissing the complaint.

Date: _____          _____
                                     Stephen S. Mitchell
Alexandria, Virginia                 United States Bankruptcy Judge

Copies to:

Malik Cutlar, Esquire
Albo & Oblon, LLP
2200 Clarendon Blvd. Suite 1201
Arlington, VA 22201
Counsel for the plaintiff

John W. Bevis, Esquire
10521 Judicial Drive, Suite 204
Fairfax, VA  22030
Counsel for the defendant